## COVINGTON COAL PRODUCTS CO. et al. v. STOGNER, Adm'x.

No. 27625.   Oct. 12, 1937.

A. E. White, for plaintiffs in error.

Claud Briggs, W. P. Morrison, and John Morrison, for defendant in error.

RILEY, J.  This is an action commenced by defendant in error, as administratrix of the estate of Roy E. Stogner, deceased, to recover damages from the plaintiffs in error for the injury and death of Roy E.

Stogner because of the alleged negligence of defendants. The parties are hereinafter referred to as they appeared in the trial court.

At the time Roy E. Stogner received the injuries which later resulted in his death, he was an employee of the defendant Covington Coal Products Company. Defendant Arthur McGowan was a "slope foreman" for the company. In part his duties were to keep the slope haulway, that is, the haulway through which coal and rock were transported from the coal mine, and supplies and tools were taken into the mine in cars operated by machinery, in proper condition for the operation of the cars.

Plaintiff alleged, in substance, that the defendants were guilty of negligence in failing to provide deceased a reasonably safe place in which to work, in that at certain points in said "slope" the roof or "top" was too low to permit safe passage; that in several places the clearance between the rails and the roof of the slope was not more than 38 to 40 inches; that the cars operated over said track when loaded extended to a height of from 30 to 40 inches, and that at one place where the clearance was but 38 to 40 inches a large metal spike had been driven into a timber across the top of the slope immediately over the travel or haulage way, which spike protruded from the timber and extended downward with the "pitch" of the slope. That deceased, in the performance of his duties, was required to use an electric lamp attached to his cap and connected to a battery attached to a belt around his waist by a cord; that deceased was ordered and directed by his superiors to take a defective telephone box out of the mine and replace it; that in doing so he was directed to ride a "loaded trip" consisting of some four cars loaded with rock, and carry with him the telephone box; that while riding the trip as directed, the cord connecting the lamp on his cap with the battery carried on his back attached to his belt caught on the protruding spike, whereby he was dragged from his position and caught between the car and the roof of the slope, and received the injuries which caused his death. He lived some 53 days, and plaintiff sought recovery in one cause of action for his pain and suffering, and in a second cause for his death.

Defendant answered by way of general and specific denial, admitting, however, that plaintiff was administratrix, and that deceased was in the employ of the defendant Coal Products Company. They alleged that his employment was that of a switchman, his duties being to switch the coal cars used in hauling coal from the mine, and couple and make up the "trips" preparatory to hauling same along the main slope. They then alleged that at the time of the injury of plaintiff's decedent, the defendant coal company maintained a proper manway for ingress and egress into and out of said mine, and that it was the duty of deceased to use said manway, as an exit from said mine in case he descended for any purpose, to go to the top; that deceased was expressly forbidden by the rules of the company as well as the law of the state from riding upon any loaded coal car being hauled from said mine; that if deceased did attempt to ride upon a "trip" of loaded cars as alleged in the petition, such conduct was wholly without the duties of decedent as a switchman, and was wholly without the knowledge or consent of defendants, or any of them, or any officer or agent of defendant Coal Products Company. That if deceased was injured as alleged, it was due to, and proximately caused by, his negligence, carelessness, want of care, and disobedience of orders and of the law, all of which contributed to, concurred in, and proximately caused any injury plaintiff's decedent may have suffered or sustained.

Reply was by general denial. The cause was tried to a jury, resulting in a verdict and judgment of $1,000 on the first cause of action, and $5,800 on the second cause of action.

There are 15 assignments of alleged error. They are presented under three propositions.

It is first contended that the verdict and judgment is without evidence to support it.

It is first said that this is particularly true as to defendant McGowan. The petition alleged that it was his duty to conduct the operations of the mine in a prudent and safe manner, etc. It is claimed that there is no evidence to support said allegations, and, therefore, the demurrer to plaintiff's evidence should have been sustained as to defendant McGowan. It is conceded that there is evidence showing that McGowan was slope foreman on the day shift.

But it is asserted that the night foreman was one Bob Anderson, and that because plaintiff's decedent was working at night at the time he was injured, the defendant McGowan owed him no duty.

There might be merit in the contention except for the fact that there was evidence tending to show that a part of the duties of slope foreman was to see that proper height was maintained in the haulway; that timber men did that work under the direction of the slope foreman. As to the timbers of the particular place where the clearance was but about 42 inches, according to the evidence, and where the large spike was driven into one of them, there is evidence tending to show that the timbers were so placed at the direction of defendant McGowan and V. M. Stroud, mine foreman in charge of the mine in which Stogner was employed. The uncontradicted evidence is that no manway was maintained at that particular mine, and that the only way for men to enter and leave the mine was by or through this particular slope or haulway. Apparently they all rode the cars in and out of the mine. Ordinarily they rode empty cars. It will thus be seen a part of McGowan's duties was to see that this haulway was in a reasonably safe condition for such use as the company made of it. If men were required to go through this haulway, either by day or by night, McGowan was under a duty to use ordinary care for their safety.

There was sufficient evidence on this point to take the case to the jury.

It is contended that the demurrers should have been sustained as to the defendant Coal Products Company because there is no direct evidence as to where the injury occurred.

The evidence on this point is for the most part circumstantial. There is evidence, without objection, that immediately after the injury, when deceased was brought to the top, when asked how the injury occurred, he said: "I hung my hat cord * * * this is what happened." When asked where it was, he said: "Way down there at the bottom, at those crossbars." That was where the low place in the roof was and there was where the spike was driven into one of the cross timbers. In all other places the roof was about five feet above the floor.

It is well settled that in actions of this nature the place where and the manner in which injuries are received may be shown by circumstantial evidence; the rules relating to proof by circumstantial evidence apply as in other cases. It is true that mere proof of an injury is not sufficient. Plaintiff must go further and produce proof of some fact or circumstance from which it might reasonably be inferred that defendant was in some way to blame for the injury. This essential fact may be by circumstantial evidence and the reasonable inference to be drawn therefrom. Missouri, K. & T. Ry. Co. v. Minor, 75 Okla. 10, 181 P. 142.

The causal connection between defendant's negligence and the injury sued for may be established by circumstantial evidence. Highway Construction Co. v. Shue, 173 Okla. 456, 49 P. (2d) 203.

If, from the facts and circumstances in evidence, it may reasonably be inferred that the injury came in whole or in part from the defendant's negligence, and there are no contrary inferences that may as well be drawn from the facts and circumstances, the proof is sufficient, and verdict for plaintiff is not based upon conjecture.

Some contention is made that because no direct proof of life expectancy was offered, there was no evidence by which damages could be measured.

This contention cannot be sustained.

The only cases cited on this point go entirely to the competency of mortality tables to prove life expectancy. They are competent evidence, but not the only competent evidence, nor are they conclusive. It is not essential that such evidence be produced where there is other evidence tending to show age, condition of health, etc. San Bois Coal Co. v. Resetz, 43 Okla. 384, 143 P. 46; Beems v. Chicago, R. I. & P. Ry. Co., 67 Iowa, 435, 25 N. W. 696.

Finally it is contended that plaintiff should not recover because deceased was not performing his work in the usual and customary manner, and left his usual work and the place where it was being performed and rode the "loaded trip" in violation of the rules of the company, instructions and orders of his superiors, and in violation of the law.

It is fairly well settled that a master is

not liable for injury to one of his servants where the servant departs from his ordinary and usual way and manner of performing his duties, which results in his injury, or where he acts in violation of the rules of employment or instructions of his superiors, or in violation of law.

There was evidence that the rules of the company forbade employees from riding on loaded cars. But there is also evidence tending to show that this rule was habitually violated by the employees with the knowledge of those in charge of the operation of the mine; that on numerous occasions men had ridden the loaded cars with the knowledge of their foreman, and sometimes the foremen themselves rode with the other employees.

There is also evidence tending to show that on the particular occasion when Stogner was injured he was ordered and directed to take the telephone out of the mine and get another one in its place and was ordered to ride the loaded trip and carry the telephone. There was also evidence denying this, but the question was for the jury.

In such cases the law exempting the employer from liability is not applicable. Delaware, etc., R. Co. v. Petrowsky, 250 Fed. 554, 162 C. C. 570.

Other cases are cited in the brief of plaintiff to the same effect.

The general rule is:

"Where the rules and regulations established by the master are habitually disobeyed with the knowledge or express consent of the master, or have been disregarded without his express consent in such a manner and for such a length of time as to raise a presumption that he must have become aware of such habitual disregard and approved the same, or a practice has been established by the master inconsistent with such rules and regulations, such rules and regulations will be regarded as waived, and the master cannot rely upon them to defeat an action by an injured employee."

This court in Selden-Breck Const. Co. v. Linnett, 38 Okla. 704, 134 P. 956, adhered to the general rule.

The other propositions stated by defendants go to the refusal of certain instructions requested by defendants and refused by the court, and to alleged erroneous instructions given.

A careful review of the record will disclose that there was no error in either. In each case each instruction offered was either given or the question was properly covered by other instructions.

In some of the instructions offered, defendants in substance asked the court to direct the jury that certain alleged conduct of deceased concerning which there was some evidence would constitute contributory negligence. It is well settled that in this state contributory negligence is a question of fact entirely for the jury, and the court may not tell the jury that any particular act or set of acts constitutes contributory negligence as a matter of law.

The instructions given were remarkably free from error, and fairly stated the law applicable. We deem it unnecessary to discuss the instructions separately.

The judgment is affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and CORN, GIBSON, HURST, and DAVISON, JJ., concur. WELCH and PHELPS, JJ., absent.